436 F.2d 1101
 John STEIB et al., Plaintiffs-Appellants-Cross-Appellees,
v.
NEW ORLEANS CLERKS AND CHECKERS, LOCAL NO. 1497, Affiliated with the International Longshoremen's Association of the A.F.L.-C.I.O., et al., Defendants-Appellees-Cross-Appellants.
 No. 30020 Summary Calendar.*
 United States Court of Appeals, Fifth Circuit.
 January 8, 1971.
 Rehearing Denied February 11, 1971.
 
 Gilbert P. Cohen, Gretna, La., Jackson & Hess, New Orleans, La., for defendants-appellants, New Orleans Clerks and Checkers, Local No. 1497.
 Greenberg & Cohen, Gretna, La., for plaintiffs-appellants.
 Victor H. Hess, Jr., New Orleans, La., Gleason & Miller, New York City, for defendant-appellee, International Longshoremen's Association, AFL-CIO.
 Brock & Williams, Houston, Tex., for South Atlantic and Gulf Coast District, ILA, AFL-CIO.
 Before GEWIN, GOLDBERG and DYER, Circuit Judges.
 PER CURIAM:
 
 
 1
 From the District Court's Order enjoining the collection and retention of increased dues by Local No. 1497, Steib and Local No. 1497 appeal. Both assert that the court has misconstrued 29 U.S. C.A. § 411.[1] Steib contends that the District Court erred in refusing to preliminarily enjoin a check-off of three cents per hour for the International Longshoremen's Association and the South Atlantic and Gulf Coast District, even though the method of computing these dues was specifically approved by a majority of delegates voting at the District's regular convention. See 29 U. S.C.A. § 411(a) (3) (B) (i). Local No. 1497 argues that the District Court misdefined the substance of the check-off: it urges that, with respect to the local, funds checked off comprised a service charge, not dues. However, neither party seriously challenges the District Court's findings of fact.
 
 
 2
 Discerning no merit in either appellant's legal position, we affirm. We approve and adopt the reasons articulated by the District Court in its findings of fact and conclusions of law appended below. The judgment appealed from is
 
 
 3
 Affirmed.
 
 APPENDIX
 FINDINGS OF FACTS AND CONCLUSIONS OF LAW
 
 4
 (Number and title (Filed:
omitted) May 8, 1970)
 
 
 5
 CHRISTENBERRY, District Judge.
 
 
 6
 Plaintiffs filed this suit to enjoin the defendants, New Orleans Clerks and Checkers, Local No. 1497, Affiliated with the International Longshoremen's Association of the A.F.L.-C.I.O. (hereinafter referred to as "Local 1497"), its President, Frank A. Zeller, and its Vice-President, James McCleland, Jr. from the collection by check-off authorization, or otherwise, of six cents for each hour of pay received by the members of Local No. 1497 pursuant to a contract between Local No. 1497 and the New Orleans Steamship Association dated October 1, 1968. The petition further seeks a return to the members of Local No. 1497 of all sums collected pursuant to the check-off authorization under the aforesaid contract. Thereafter, by order of the court dated July 23, 1969, the International Longshoremen's Association (hereinafter referred to as "ILA") and the South Atlantic and Gulf Coast District of the International Longshoremen's Association (herein referred to as "District Council") were granted leave to intervene in the proceedings. The petitioners contend that the six cents per hour check-off authorization was an increase in dues pursuant to the Labor-Management Reporting and Disclosure Act of 1959 as amended, 73 Stat. 519-541, 29 U.S.C.A. §§ 401-531, and as such, the members of Local No. 1497 were entitled to a secret ballot on the proposed increase. The defenses asserted by the three defendants and intervenors were that the complainants have not exhausted their internal union remedy; that the complainants are not entitled to the preliminary injunction because they have not suffered irreparable injury or damage; that the check-off authorization of six cents per hour is not dues, initiation fees or assessments within the meaning of 29 U.S.C.A. Sec. 411(a) (3); and that under the constitutions of the District Council and the ILA the three cents per hour had been legally imposed upon the members of Local No. 1497.
 
 
 7
 The case was heard on August 13, 1969. The court took the matter under advisement at that time. The New Orleans Steamship Association who had been made a party to the proceedings by a supplemental amendment to the complaint made no appearance on the date of the hearing. However, subsequent to the hearing, the New Orleans Steamship Association filed a motion to dismiss and/or for summary judgment primarily on the ground that the court lacked jurisdiction over the New Orleans Steamship Association. The court granted the motion of the New Orleans Steamship Association by Minute Entry of September 5, 1969 pursuant to the authorities set forth in the said minute entry.
 
 FINDINGS OF FACT
 
 8
 1. Plaintiffs, except for one person, are members of the Local No. 1497 in good standing. The defendant, Local No. 1497, and the intervenors, the ILA and the District Council are labor organizations within the meaning of the Labor-Management Reporting and Disclosure Act of 1959 as amended, 73 Stat. 519-541, 29 U.S.C.A. §§ 401-531 (hereinafter referred to as the "Act"). The defendant, Frank A. Zeller, is and at all times material herein has been the President of Local No. 1497, and defendant, James McCleland is and at all times material herein, has been Vice-President of Local No. 1497.
 
 
 9
 2. The intervenors, South Atlantic and Gulf Coast District, ILA, AFL-CIO and International Longshoremen's Association, AFL-CIO, are not local labor organizations.
 
 
 10
 3. The intervenor, International Longshoremen's Association, AFL-CIO, is an international labor organization with which Local No. 1497, ILA, is affiliated, and Local 1497, ILA, was issued its charter by the International Longshoremen's Association, AFL-CIO.
 
 
 11
 4. The intervenor, South Atlantic and Gulf Coast District, ILA, AFL-CIO, is an intermediate or district labor organization with which Local No. 1497, ILA, is affiliated and a member.
 
 
 12
 5. The South Atlantic and Gulf Coast District, ILA, AFL-CIO, has its own constitution and by-laws that control the conduct and business affairs of the South Atlantic and Gulf Coast District.
 
 
 13
 6. In accord with the terms and provisions of the South Atlantic and Gulf Coast District's constitution and by-laws, the District's annual, regular convention was held in Brownsville, Texas in June, 1968, after giving the notice required by law to each constituent labor organization and, at such time, a majority of the delegates voting at such regular convention duly voted for Article VIII, § 1 of the District's constitution and by-laws.
 
 
 14
 7. Local No. 1497 entered into a contract with the New Orleans Steamship Association dated October 1, 1968 which provided for a check-off authorization of six cents per man for each hour worked. The vote by the members of Local No. 1497 for the ratification of the contract and check-off authorization contained therein was not by secret ballot. At the meeting for the approval of the contract and check-off authorization therein, certain members of Local No. 1497 requested a secret ballot but were refused by the President, Frank A. Zeller. The members were told at that time by Zeller that they had no recourse after he refused the secret ballot.
 
 
 15
 8. The six cents (6¢) check-off was to be divided by the payment of three cents (3¢) per hour to the South Atlantic and Gulf Coast District, ILA, AFL-CIO and the International Longshoremen's Association, AFL-CIO, and the remaining three cents (3¢) was to be retained by Local No. 1497, ILA.
 
 
 16
 9. Thereafter, when the contract went into effect, 49 of the plaintiffs refused to sign the check-off authorization. Frank A. Zeller told the members that if they refused to sign the check-off authorization, he would have them "knocked off" and discharged. Thereafter, he executed "knock off" slips on all of the 49 plaintiffs who refused to sign the check-off authorization for nonpayment of "dues." As a result, the 49 complainants signed the authorization under "protest and duress." Zeller refused to accept the authorizations signed under protest. Plaintiff, John Steib had to take the authorizations to the employer. Frank A. Zeller stated that he would discharge any members who refused to sign the three cents check-off authorization for the ILA and District Council but as to the remaining three cents designated for the Local No. 1497 he did not know.
 
 
 17
 10. Zeller told the members of Local No. 1497 at the contract ratification meeting and when they signed the check-off authorization that the Local would retain four of the six cents. Subsequently, in March of 1969, he received a letter from the ILA and District Council that the Local No. 1497 would only retain three cents. Approximately two months later he informed the members of this change.
 
 
 18
 11. The checked off funds of those signing under protest are being held by those members of the New Orleans Steamship Association who are their employers. The remaining funds are being held by Local No. 1497. The President, Frank A. Zeller, may at any time discharge the members of Local No. 1497 who revoke or fail to sign the check-off authorization. He may further at any time discharge the members who have signed the check-off authorization under protest.
 
 
 19
 12. A check-off authorization of two cents per hour for the ILA was provided in the prior contract between Local No. 1497 and the New Orleans Steamship Association which was in effect between October 1, 1964 and September 30, 1968. The contract terminated on September 30, 1968. Prior to October 1, 1964, there was no check-off authorization and the ILA dues were paid by the Local from the membership dues on a per capita basis of 85 cents per month per member. There has never been any payment to the District Council prior to the present check-off. Both the ILA constitution and the District Council constitution provide for a monthly per capita tax of $1.35 for each member and 50 cents for each member respectively to be paid by the Local as an alternative to the hourly check-off authorization. The annual dues of each member of Local 1497 are $100.00.
 
 CONCLUSIONS OF LAW
 
 20
 1. This court has jurisdiction of the parties and of the subject matter, Labor-Management Reporting and Disclosure Act, 1959, as amended, 73 Stat. 519-541, 29 U.S.C.A. §§ 401-531.
 
 
 21
 2. The Act provides that in the case of a local labor organization, an increase of dues must be approved by the majority vote of the members in good standing voting by a secret ballot. 29 U.S.C.A. Sec. 411(a) (3).
 
 
 22
 The Act does not require either the South Atlantic and Gulf Coast District, ILA, AFL-CIO, or the International Longshoremen's Association, AFL-CIO, to approve an increase in dues by a majority vote of the members in good standing voting by secret ballot.
 
 
 23
 3. Under the provisions of the Act, the South Atlantic and Gulf Coast District, ILA, AFL-CIO, and the International Longshoremen's Association, AFL-CIO, may increase the dues by a majority vote of the delegates voting at a regular convention without a secret ballot.
 
 
 24
 4. The failure to allow a secret ballot of the three cents check-off to Local 1497 invalidates the check-off, 29 U.S.C. A. Sec. 411(a) (3); Sawyers v. Grand Lodge, International Ass'n of Machinists, 279 F.Supp. 747 (E.D.Mo.1967); King v. Randazzo, 234 F.Supp. 388, 394 (E.D.N.Y.1964), [aff'd, 346 F.2d 307 (2 Cir.1965)]; Local No. 2, International Brotherhood of Telephone Workers v. International Brotherhood of Telephone Workers, 362 F.2d 891, 894 (1st Cir. 1966).
 
 
 25
 5. The three cents (3¢) check-off authorization to Local No. 1497 is an increase in dues within the meaning of the Act. It is not a per capita tax which is levied by a parent labor organization upon a local union. Sawyers v. Grand Lodge, International Ass'n of Machinists, supra; King v. Randazzo, supra; Local No. 2, International Brotherhood of Telephone Workers v. International Brotherhood of Telephone Workers, supra.
 
 
 26
 6. The three cents portion of the six cents check-off to be retained by Local No. 1497 is not a "service charge" outside of the purview of the Act, as found in Local No. 1351, Steamship Clerks and Checkers, etc. v. N.L.R.B., 117 U.S.App. D.C. 304, 329 F.2d 259 (1964). It is an increase in dues within the meaning of the Act. Sawyers v. Grand Lodge, International Ass'n of Machinists, supra; King v. Randazzo, supra; Local No. 2, International Brotherhood of Telephone Workers v. International Brotherhood of Telephone Workers, supra.
 
 
 27
 7. To allow the Local No. 1497 to call the increase in dues a "service charge" and free it from the coverage of the Act would tend to defeat the policy and purpose of the Act and undermine some of the safeguards which Congress has placed in the Act. Whether there has been an increase in dues must be determined not by what it is called but whether it imposes a direct financial burden on the individual member, which is the present situation. Calling the three cent increase a "service charge" would simply be a subterfuge to increase dues. Local No. 2, International Brotherhood of Telephone Workers v. International Brotherhood of Telephone Workers, supra; King v. Randazzo, supra.
 
 
 28
 8. The officers of the Local were required to bring to the attention of its members an available internal union remedy which they failed to do. Further, the constitutions of the three defendant bodies do not expressly provide a remedy for petitioners. The failure of the officers of the Local to bring to the attention of the members an available union remedy and the failure of the respective constitutions to expressly provide a remedy relieve petitioners from exhausting union remedies prior to instituting these proceedings. Detroy v. Amer. Guild of Variety Artists, 286 F.2d 75, 80 (2 Cir. 1961).
 
 
 29
 9. The defendant, Local No. 1497, has attempted to enforce collection of this illegal increase of three cents in dues by jeopardizing the job status of its members, and under these circumstances, plaintiffs will sustain irreparable harm and are entitled to a preliminary injunction enjoining the collection of such dues. King v. Randazzo, supra.
 
 
 30
 10. The three cents (3¢) which was to be paid to the South Atlantic and Gulf Coast District and the International Longshoremen's Association out of the six cents (6¢) check-off authorization was passed by a majority vote of the delegates to the regular convention in Brownsville, Texas in June, 1968, and is valid and enforceable.
 
 
 31
 11. All costs of this proceeding shall be borne by the defendants.
 
 
 32
 Judgment has been entered accordingly.
 
 
 
 Notes:
 
 
 *
 [1] Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York, et al., 5 Cir. 1970, 431 F.2d 409
 
 
 [1]
 29 U.S.C.A. § 411 provides:
 § 411. Bill of rights; constitution and bylaws of labor organizations.
 (a) (1) Equal rights. — Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws.
 (2) Freedom of speech and assembly. — Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: Provided, That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.
 (3) Dues, initiation fees, and assessments. — Except in the case of a federation of national or international labor organizations, the rates of dues and initiation fees payable by members of any labor organization in effect on September 14, 1959 shall not be increased, and no general or special assessment shall be levied upon such members, except —
 (A) in the case of a local labor organization, (i) by majority vote by secret ballot of the members in good standing voting at a general or special membership meeting, after reasonable notice of the intention to vote upon such question, or (ii) by majority vote of the members in good standing voting in a membership referendum conducted by secret ballot; or
 (B) in the case of a labor organization, other than a local labor organization or a federation of national or international labor organizations, (i) by majority vote of the delegates voting at a regular convention, or at a special convention of such labor organization held upon not less than thirty days' written notice to the principal office of each local or constitutent labor organization entitled to such notice, or (ii) by majority vote of the members in good standing of such labor organization voting in a membership referendum conducted by secret ballot, or (iii) by majority vote of the members of the executive board or similar governing body of such labor organization, pursuant to express authority contained in the constitution and bylaws of such labor organization: Provided, That such action on the part of the executive board or similar governing body shall be effective only until the next regular convention of such labor organization.
 (4) Protection of the right to sue. — No labor organization shall limit the right of any member thereof to institute an action in any court, or in a proceeding before any administrative agency, irrespective of whether or not the labor organization or its officers are named as defendants or respondents in such action or proceeding, or the right of any member of a labor organization to appear as a witness in any judicial, administrative, or legislative proceeding, or to petition any legislature or to communicate with any legislator: Provided, That any such member may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization, before instituting legal or administrative proceedings against such organizations or any officer thereof: And provided further, That no interested employer or employer association shall directly or indirectly finance, encourage, or participate in, except as a party, any such action, proceeding, appearance, or petition.
 (5) Safeguards against improper disciplinary action. — No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing.
 (b) Any provision of the constitution and bylaws of any labor organization which is inconsistent with the provisions of this section shall be of no force or effect. Pub.L. 86-257, Title I, § 101, Sept. 14, 1959, 73 Stat. 522.