**Frank F. ARNOLD, Plaintiff,**

v.

**DISTRICT COUNCIL NO. 9, INTERNATIONAL BROTHERHOOD OF PAINTERS AND ALLIED TRADES and International Brotherhood of Painters and Allied Trades, AFL–CIO, Defendants,**

and

**Paperhangers Local Union 490 of the International Brotherhood of Painters and Allied Trades, Petitioner to Intervene.**

No. 76 CIV. 2816.

United States District Court, S. D. New York.

Dec. 13, 1976.

Dillon & O'Brien by James P. McGarry, Stephen Rauch, New York City, for plaintiff.

Vladeck, Elias, Vladeck & Lewis by Stephen C. Vladeck, Sheldon Engelhard, Robert L. Jauvtis, New York City, for defendant International.

Michael F. Dennis, Garden City, N. Y., for defendant District Council No. 9.

Burton Hall, New York City, for petitioner.

## MEMORANDUM OPINION

MOTLEY, District Judge.

The plaintiff, Frank F. Arnold ("Arnold") seeks an injunction permanently enjoining Local Union 490 from electing its business representative so long as an "unqualified"

candidate remains on the ticket. A show cause order was signed on June 25, 1976 which temporarily enjoined the election scheduled for the next day. Argument was heard on the injunction on July 1st and 2d. We hold that the court has no jurisdiction over this claim, and we therefore vacate the temporary restraining order and dismiss the complaint with prejudice.

Arnold and Mr. Daniel French ("French") are both members of Paperhangers' Local Union 490 ("Local 490") and were duly nominated to run for the position of business representative for that local. District Council No. 9 ("District Council") is the regional union body which, among its other functions, oversees the local elections for business representative in accordance with its own bylaws. International Brotherhood of Painters and Allied Trades, AFL–CIO ("International") is the parent body.

After both Arnold and French were nominated, they appeared before the Supervisor of Elections of the District Council, pursuant to its bylaws, so that their qualifications for office could be verified. The result of this examination was that French was disqualified because he had allegedly failed to pay his dues timely and because he had refused to present his dues book—violations of the Union Constitution and the District Council bylaws respectively. French appealed this decision to the President of International, and the President ordered the District Council to reinstate French's name on the ballot or face the possibility of serious sanctions. The District Council did reinstate French on June 23, and the show cause order was signed on June 25.

■ The complaint claims that jurisdiction is grounded on Sections 101 and 102 of the Labor-Management Reporting and Disclosure Act of 1959.[1] Section 101(a)(1) reads:

Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, . . . subject to reasonable rules and regulations in such organization's constitution and bylaws.

Section 102 is the jurisdictional section which provides that the district courts have the power to remedy violations of § 101. Both of these sections are contained in Title I of the LMRDA and will be collectively referred to as "Title I."

Arnold claims that § 101 is violated when an unqualified candidate is presented to the electorate because he

would certainly be discriminated against and deprived of equal rights and privileges to nominate and vote. This would appear self-evident since his right to nominate and vote and the similar rights of his supporters would be clearly prejudiced and compromised since Mr. French and his supporters would be given the right to nominate and vote for an unqualified candidate, something denied other members under the Union Constitution. Consequently, each vote for Mr. French, an unqualified candidate, would result in a separate act of discrimination against Mr. Arnold and a dilution of his right to an equal vote and to nominate a qualified candidate. (Plaintiff's memorandum of Law at 6.)

Even if we grant that French was not qualified, it is certainly not clear that the voters of Local 490 have been denied *equal* rights or privileges. Any voter can vote for whomever he wishes, and Arnold (the relevant party since this is not a class action) is in this same position. What the plaintiff's argument boils down to is that he is cheated out of a vote every time one is cast for French—who is, Arnold claims, not properly on the ballot. But to say that he is being cheated of his vote is simply not the same as saying that the voting rights of Arnold and his supporters are "not equal" in the statutory sense. The Supreme Court has made this point clear in *Calhoon v. Harvey,* 379 U.S. 134, 85 S.Ct. 292, 13 L.Ed.2d 190 (1964), *reh. den.* 379 U.S. 984, 85 S.Ct. 639, 13 L.Ed.2d 577. (*See also Mamula v. Unit-*

---

**1.** Pub.L. 86–257, Tit. I, § 101, 73 Stat. 522. 29 U.S.C.A. §§ 411 and 412.

*ed Steel Workers of America*, 304 F.2d 108 (3d Cir.), *cert. den.*, 371 U.S. 823, 83 S.Ct. 42, 9 L.Ed.2d 63 (1962).

The plaintiffs in *Calhoon* contended that certain provisions of the bylaws and the national constitution infringed "the right of members of defendant District No. 1, NME-BA, to nominate candidates in elections of defendant." Specifically, they claimed that these provisions severely restricted the number of persons who could be nominated for union office. The problem in *Calhoon* was, essentially, the reverse of that in the instant case since in *Calhoon* persons were *prevented* from being on the ballot, while Arnold claims that French is improperly *on* the ballot.

The Court interpreted the purpose of Title I:

"Plainly, [section 101] is no more than a *command* that members and classes of members shall not be discriminated against in their right to nominate and vote. . . . The complaining union members here have not been discriminated against in any way and have been denied no privilege or right to vote or nominate which the union has granted to others . . . It is true that they were denied their request to be candidates, but that denial was not a discrimination against their right to nominate, since the same qualifications were required equally of all members. Whether the eligibility requirements set by the unions' constitution and bylaws were reasonable and valid is a question separate and distinct from whether the right to nominate on an equal basis given by § 101(a)(1) was violated." *Calhoon* 379 U.S. at 139, 85 S.Ct. at 295.

The Court also carefully distinguished Title I of the Act from Title IV. "Title IV, not Title I, sets standards for eligibility and qualifications of candidates and officials

and provides its own separate and different administrative and judicial procedure for challenging those standards."[2] *Calhoon* at 138, 85 S.Ct. at 295.

In brief, Title IV sets the standards which govern the election of officers in national or international labor organizations. It covers the distribution of campaign literature, inspection of membership lists, and sets certain guidelines for conducting union elections. Most importantly for our purposes, § 402 provides that a member of a labor organization may file a complaint with the Secretary of Labor *after* the election has been conducted if he feels that any provision of § 401 has been violated. The Secretary is then given the power to investigate the offense and file a civil complaint if warranted. Title IV only applies to the election of union "officers" as defined in Section 3 of the Act, and, as noted, is useful only *after* an election has been held.

The plaintiff is complaining about the qualifications of French and the method by which he was nominated; under *Calhoon*, Title IV and not Title I is the governing title. Arnold characterizes the actions of International as a violation of the equal rights and privileges of him and his supporters, but the argument is convoluted, and the problem of which he complains is precisely that to which Title IV, not Title I, is addressed.

Arnold asserts that *Calhoon* is distinguishable from the instant case, and its principles are therefore not applicable. Here, says Arnold, the plaintiff is not asserting a right of candidacy; rather, he is admittedly a candidate and is attempting to *enforce* the constitutional qualification requirements so as to have them uniformly applied. But the holding in *Calhoon* is not so narrow. *Calhoon* stands for the proposition that all challenges to the union nomination process—whether it be that it is too

---

**2.** Pub.L. 86–257, Title IV, §§ 401 et seq., 73 Stat. 532. 29 U.S.C.A. §§ 481 et seq. Section 401(e) reads in pertinent part:

"In any election required by this section which is to be held by secret ballot a reasonable opportunity shall be given for the nomination of candidates and every member in good standing shall be eligible to be a candidate and to hold office . . . and shall have the right to vote for or otherwise support the candidate or candidates of his choice . . . ."

restrictive or too permissive—are covered only by Title IV of the Act. And Title IV only becomes effective *after* the challenged election has been held. The rationale for this delay, and the very reason why relief should be denied in this case, is that "Congress . . . decided not to permit individuals to block or delay union elections by filing federal-court suits for violations of Title IV." *Calhoon* at 140, 85 S.Ct. at 296.

Arnold further argues that, since the business representative is not an "officer" for the purpose of Title IV, Title IV—and its limited post-election relief—is inapplicable; thus, Title I *must* bestow jurisdiction. Even if we accept the proposition that the election of business representative is not covered by Title IV,[3] to accept Arnold's syllogism would lead to a *reductio ad absurdum.* The result would be that the election of a higher ranking "officer" could only be challenged *after* the election has occurred, while union members would be free to challenge the elections of lesser positions *before* the election. Congress surely did not intend to bestow greater protections on non-officers than it did on officers.

■ Arnold's final argument is, even if neither Title I nor Title IV can confer jurisdiction on this court, we should accept his invitation to fashion a remedy for the wrong to plaintiff under the "developing federal common law of labor." This we decline to do. Congress has fashioned a comprehensive statutory scheme which is designed to govern union elections—as far as it goes. Congress did not intend to provide a remedy for every wrong suffered by a union member; we should not presume that the omission of a remedy in a situation such as Mr. Arnold's was inadvertent. The plaintiff has the burden of establishing the jurisdiction of a federal court, and it is not enough to assert the existence of a "labor dispute" to meet this burden. *See Big Apple Supermarkets, Inc. v. Dutto,* 237 F.Supp. 774 (E.D.N.Y.1964). The Labor-Management Reporting and Disclosure Act extends no relief to Mr. Arnold, and "[a]bsent an express basis for federal jurisdiction, power to decide whether a union has abided by its own by-laws and rules, remains with the state courts." *Carroll v. Associated Musicians of Greater New York, Local 802,* 235 F.Supp. 161, 174 (S.D.N.Y. 1963).

The temporary restraining order is vacated, and the complaint is dismissed since no jurisdiction lies in this court. Furthermore, the petition by Paperhangers' Local Union 490 to Intervene is denied on the ground that its interests are adequately protected by defendant International—who has vigorously defended the charges lodged by the plaintiff. Rule 24(a), Fed.R.Civ.P.

---

**3.** Defendant argues that business representative *is* an "officer" for Title IV purposes. We do not find it necessary to reach this question.