Robert MORI and Sam Polino, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

INTERNATIONAL BROTHERHOOD OF BOILERMAKERS, IRON SHIP BUILDERS, BLACKSMITHS, FORGERS AND HELPERS, LOCAL LODGE NO. 6, and International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, AFL–CIO, Defendants.

No. C 78–2759 SAW.

United States District Court, N. D. California.

July 5, 1979.

Joe R. McCray, San Francisco, Cal., for plaintiffs.

Charles P. Scully, Donald C. Carroll, San Francisco, Cal., Joseph W. Moreland, Blake & Uhlig, Kansas City, Kan., for defendants.

## MEMORANDUM AND ORDER

WEIGEL, District Judge.

The issue in this case is whether an international union has the power to raise dues payable to a local without approval of the members of the local.

Robert Mori and Sam Polino challenge that power in their class action suit for damages and injunctive relief against the International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, Local Lodge No. 6 (hereafter "Local 6") and the International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, AFL–CIO (hereafter "the International"). They claim that the increase in their local union dues violates their rights under the constitution of the International and under the "Bill of Rights" of the Labor Management Reporting and Disclosure Act of 1959 (hereafter "LMRDA"), 29 U.S.C. §§ 411(a)(1) and 411(a)(3)(A).

Defendants do not dispute that plaintiffs are members in good standing of the defendant organizations; that Local 6 is a local labor organization headquartered in San Francisco, California; and that it is a local affiliate of the International, an international labor organization whose principal place of business is in Kansas City, Kansas.

Accordingly, this Court has jurisdiction under 29 U.S.C. § 412 and 28 U.S.C. § 1337.[1]

■ Defendants move to dismiss the complaint for failure to state a claim upon which relief may be granted. To prevail on their motion, defendants must show beyond any doubt that the plaintiffs cannot prove sufficient facts to entitle plaintiffs to relief. *Conley v. Gibson*, 355 U.S. 41, 45, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Cal. Dump Truck v. Associated General Contractors*, 562 F.2d 607, 614 (9th Cir. 1977). Defendants have not made the requisite showing.

■ For the purposes of deciding this motion, the well-pleaded allegations in the complaint must be taken as true. *Id.; Mark v. Groff*, 521 F.2d 1376, 1378 (9th Cir. 1975). Those allegations are as follows:

Plaintiffs are part of a class of members of Local 6 who have field construction cards and are qualified to work in the construction trade. Prior to August, 1977, the membership of Local 6 established its own local dues rates by secret ballot election. Members of said class paid to Local 6 field dues of $4.00 per month in addition to the regular monthly local dues.

A regular convention of the International was held in August 1977. At that convention a majority of the delegates present and voting "purportedly" adopted a new dues structure applicable only to field construction members. The new structure required that plaintiffs and other field construction members pay not less than two percent of their gross income to their local as a field dues supplement to their regular local dues, unless a lesser amount was approved by the International president.

Since January 1, 1978, defendants have collected local field dues amounting to two percent of gross earnings plus regular local dues of $13.00 per month from plaintiffs and members of their class. The membership of Local 6 has never voted for that increase of field dues. Indeed, plaintiffs and other Local 6 members objected to the increase at a regular local membership meeting prior to the end of 1977. G. P. Campbell, chief executive officer of Local 6, then promised to ask Harold Buoy, president of the International, to relieve the field construction members of the obligation to pay the new field dues. Buoy declined to do so. Thereafter, Local 6 adopted local bylaws specifically excluding the new field dues requirement. Buoy refused to grant approval of the bylaws, his approval being necessary for them to become effective. At a regular local membership meeting in April, 1978, members of Local 6 passed, by a majority vote, a resolution refusing to allow the continuation of the two percent field dues requirement and requesting that Buoy give his permission to halt the collection of those dues. But the requested relief was not · forthcoming.

Plaintiffs contend that their rights have been violated by the imposition of the local field dues supplement without the approval of a majority of the Local 6 members in good standing, by the assessment of such dues on field construction workers but not on other members of the union, and by the failure of defendants to give plaintiffs an adequate opportunity to vote on and participate in union business.

■ Plaintiffs claim that Section 101(a)(3)(A) of the LMRDA, 29 U.S.C. § 411(a)(3)(A) provides that local dues may not be increased without the approval of a majority of local members. Defendants dispute this claim. They urge that action by local members is merely one of several permissible methods of establishing local dues. Another such method, they claim, is action by a majority of the delegates voting at an international's regular convention. *See 29 U.S.C. § 411(a)(3)(B)(i)*. Defendants maintain that the complaint concedes that the contested dues increase was enacted in pre-

---

1. It appears from the record, and defendants do not deny, that plaintiffs have exhausted their intra-union remedies. *See Winterberger v. General Teamsters Auto Truck Drivers & Help-* *ers Local Union 162,* 558 F.2d 923, 925 (9th Cir. 1977); *Buzzard v. Local Lodge 1040 International Association of Machinists and Aerospace Workers,* 480 F.2d 35, 41 (9th Cir. 1973).

cisely that manner. Therefore defendants argue that plaintiffs' claim under Section 411(a)(3)(A) must be dismissed. This argument is not well-taken.

29 U.S.C. § 411(a)(3) provides, in pertinent part:

"Dues, initiation fees, and assessments. —. . . the rates of dues and initiation fees payable by members of any labor organization in effect on September 14, 1959 shall not be increased, and no general or special assessment shall be levied upon such members, except—

(A) in the case of a local labor organization, (i) by majority vote by secret ballot of the members in good standing voting at a general or special membership meeting, after reasonable notice of the intention to vote upon such question, or (ii) by majority vote of the members in good standing voting in a membership referendum conducted by secret ballot; or

(B) in the case of a labor organization or a federation of national or international labor organizations, (i) by majority vote of the delegates voting at a regular convention, . . . or (ii) by majority vote of the members in good standing of such labor organization voting in a membership referendum conducted by secret ballot, or (iii) by majority vote of the members of the executive board or similar governing body of such labor organization, pursuant to express authority contained in the constitution and bylaws of such labor organization: *Provided,* That such action on the part of the executive board or similar governing body shall be effective only until the next regular convention of such labor organization."

As plaintiffs contend, Section 101(a)(3) states clearly that dues payable to a local labor organization may be increased only according to the methods provided in Sec-

tion 411(a)(3)(A), and not by the regular convention of an international. Section 411(a)(3)(B) establishes the methods for increasing dues payable to "a labor organization *other than* a local labor organization . . . ." (emphasis added).

Defendants' reliance on *King v. Randazzo,* 346 F.3d 307, 309 (2d Cir. 1965) is misplaced. There the court held that the convention of an intermediate union could establish the amount of dues *payable to the intermediate union* by its members. The case did not involve the question whether an intermediate union's convention can determine the dues payable to locals. *See also United Bhd. of Carpenters & Joiners v. Brown,* 343 F.2d 872, 886 (10th Cir. 1965); *White v. King,* 319 F.Supp. 122, 125 (E.D. La.1970).

Defendants also rely on *Ranes v. Office Employees, Local 28,* 317 F.2d 915 (7th Cir. 1963). There it was held that an international may, by convention vote, establish the maxima and minima of rates of dues that affiliated locals must collect from their members. The court noted that international unions had traditionally exercised the power to establish a "local dues structure sufficient to insure the financial health of the union structure." *Id.* at 917. It reasoned that "We cannot assume that Congress was unaware of the traditional structure and dues practices of labor unions when it enacted 101(a)(3), or that Congress, being aware of the traditional structure and practices, intended by enacting that Section to strip international unions of their traditional power to control the minima and maxima of rates of dues without one word in the Committee Reports expressing that intention." *Id.* Accordingly, the court rejected the argument that the minimum dues level was not binding on a local unless it was ratified by a majority of the local members pursuant to Section 411(a)(3)(A).[2]

---

2. In *Local No. 2, International Brotherhood of Telephone Workers v. International Brotherhood of Telephone Workers,* 362 F.2d 891, 896 (1st Cir.) *cert. denied* 385 U.S. 947, 87 S.Ct. 321, 17 L.Ed.2d 226 (1966), the effect of the court's holding was, as in *Ranes,* to allow the international union to establish the rate of dues payable to its affiliate local labor organizations. But the force of the decision as a precedent is vitiated by the fact that the appellants failed to raise the question whether an international union has the power to establish such dues. *See id.* at 893–94. Moreover, the court did not undertake an analysis of that question.

Neither the court in *Ranes* nor defendants in this case have suggested, and this Court has not found, anything in the legislative history of the LMRDA to support the *Ranes* holding. Indeed, *Ranes* noted that "The legislative history of the Act is silent on this question . . . ." *Id.* Defendants here have cited portions of the legislative history of the LMRDA which, far from supporting their suggested interpretation of Section 101(a)(3), show only that Congress intended to protect union members from "arbitrary financial exactions." 105 Cong. Rec. 2668. *See also* 2 U.S.Code, Cong. & Admin.News, 1959, at p. 2428. That history also shows that Congress sought to increase rank and file participation in union affairs by ensuring that members of a local union could govern themselves with a minimum of outside interference. *See United Brotherhood of Carpenters v. Brown,* 343 F.2d 878, 883 (10th Cir. 1965). *See also Hall v. Cole,* 412 U.S. 1, 7–8, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973).

■ Defendants have produced no evidence of traditional union practices to support *Ranes'* statements in that regard. *Ranes* itself relied solely on two Bureau of Labor Statistics Bulletins dating from the early 1950's. Those Bulletins state that national unions generally exercise some control over the amount of dues charged by their affiliated locals. That asserted exercise of control is not a matter of common knowledge, nor is it indisputably true today.

Indeed, at oral argument on this motion to dismiss, counsel for plaintiffs asserted, and counsel for defendants did not dispute, that international unions rarely, if ever, seek to increase local dues rates. Accordingly, there is no basis for this Court to take judicial notice of the asserted fact that international unions have traditionally set minimum local dues rates resulting in dues increases similar to those alleged to have been imposed herein.

Moreover, *Steib v. New Orleans Clerks and Checkers Local No. 1497,* 436 F.2d 1101 (5th Cir. 1971) reached a different conclusion than *Ranes* concerning the interpretation of Section 101(a)(3). In *Steib,* the court approved and adopted the district court's finding that an intermediate district union's convention vote to increase dues payable by members to their locals was invalid in the absence of a vote of ratification by local members. The district court had determined that Section 101(a)(3) requires that dues payable to a local may be prescribed only by local members. *Id.* at 1106.[3] *Cf. American Bridge Division, United States Steel Corp. v. National Labor Relations Board,* 457 F.2d 660, 666 (3d Cir. 1972).

■ In the absence of legislative history and evidence of traditional union practices supporting defendants' position, this Court respectfully declines to follow *Ranes* by interpreting Section 101(a)(3) in a manner

---

**3.** In *White v. Local No. 207 of Laborers International Union,* 387 F.Supp. 53, 56 (W.D.La. 1974), the court followed *Steib,* holding that an intermediate district convention of an international union could not increase the dues payable by members to a single constituent local. The court also expressly approved *Ranes,* reconciling *Steib* with the suggestion that it stands only for the proposition that a district council may not increase dues payable by members to their locals because the increase would affect only the locals in the district, and not all the locals in the international. The court reasoned that *Steib* does not preclude the raising of such dues by an international since that increase would apply to all locals "across the board." 387 F.Supp. at 56.

This analysis ignores *Steib*'s express finding that: "The Act provides that in the case of a local labor organization, an increase of dues must be approved by the majority vote of the members in good standing voting by a secret ballot." 436 F.2d at 1106. *White* offers no citations to the legislative history of the LMRDA to support its analysis. Moreover, *White*'s distinction between the power of an intermediate district council to set local dues and that of an international is difficult to reconcile with the plain meaning of Section 411(a)(3)(B) which expressly applies to all labor organizations other than local organizations and federations of national or international organizations, and not just to internationals. Thus any powers conferred upon an international by Section 411(a)(3)(B) appear to have been conferred equally on an intermediate union council. *See King v. Randazzo, supra; United Bhd. of Carpenters & Joiners v. Brown, supra.*

inconsistent with its plain meaning. *Cf. United States v. Wilson,* 591 F.2d 546 at 547 (9th Cir. 1979) (holding that it would be improper to construe inconclusive legislative history so as to apply a statute in a manner inconsistent with its clear and unambiguous meaning). Moreover, even *Ranes* does not necessarily preclude the argument, implicit in plaintiffs' complaint, that the dues increase in issue was unlawful because it was far greater than was necessary to "ensure the financial health of the union structure." *Ranes v. Office Employees, Local 28,* 317 F.2d at 917.

In the case at bar, the International convention went beyond the mere setting of a minimum rate of local dues, as in *Ranes.* In addition to setting such a minimum, the convention established local dues differentials among members of the International and granted the president of the International discretionary power to approve reductions in the minimum rate of dues payable to a particular local. Since Section 101(a)(3) was enacted to prevent arbitrary financial exactions, as defendants concede, plaintiffs' allegations concerning the International clearly state a cause of action under that Section. *Cf. White v. Local No. 207 of Laborers International Union,* 387 F.Supp. 53, 56 (W.D.La.1974) (Section 411(a)(3)(B) only empowers an international union to establish "across the board" increases in dues to be paid by local union members to their locals).

■ Defendants' argument that plaintiffs have failed to state a claim under 29 U.S.C. § 411(a)(1) also lacks merit. That clause provides:

> "Equal rights.—Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws."

In *Stelling v. International Brotherhood of Electrical Workers Local Union No. 1547,* 587 F.2d 1379 (9th Cir. 1978), the court found that a claim is stated under that clause if the complainants assert that they have been denied a Section 411(a)(1) right which has been given to any other member or class of members. *Id.* at 1384–85. Under a liberal construction of the complaint here, plaintiffs have satisfied *Stelling* by alleging that they have been denied an equal right to vote on and participate in the business of their union.

■ Plaintiffs also claim that they have been denied their right under the International's constitution to make and amend local bylaws affecting dues. That claim must be dismissed for lack of jurisdiction. 29 U.S.C. §§ 411–13 was not intended to create federal jurisdiction for redress of wrongs to union members resulting solely from a union's violation of its constitution. *See King v. Randazzo,* 234 F.Supp. 388, 395 (E.D.N.Y.1964), *aff'd,* 346 F.2d 307 (2d Cir. 1965). Plaintiffs have not pleaded any other basis for jurisdiction on this claim, as they must, since they have the burden of establishing jurisdiction over each of their claims. *See Arnold v. District Council No. 9,* 423 F.Supp. 861, 864 (S.D.N.Y.1976). Jurisdiction does not lie under 29 U.S.C. § 185 because plaintiffs have failed to allege that their dispute with defendants over the constitution's interpretation has "traumatic industrial and economic repercussions." *1199 DC, National Union of Hospital & Health Care Employees,* 175 U.S.App. D.C. 70, 73, 533 F.2d 1205, 1208 (1976), *quoting, Parks v. Brotherhood of Electrical Workers,* 314 F.2d 886, 916 (4th Cir. 1963). *See also Stelling v. International Brotherhood of Electrical Workers Local Union No. 1547, supra,* at 1382–84. Moreover, plaintiffs have not pleaded a basis in state law for their claim over which this Court might have pendent jurisdiction.

■ Defendants have also moved, in the alternative, for summary judgment. They have the burden of showing that, viewing all evidence in the light most favorable to plaintiffs, there is no genuine issue as to

any material fact and defendants are entitled to judgment as a matter of law. *See Abramson v. University of Hawaii,* 594 F.2d 202 at 207–208 (9th Cir. 1979). Defendants have not met this burden. The only matter they present outside the pleadings is an affidavit of Buoy, which identifies and incorporates as exhibits a copy of the current constitution of the International and a partial transcript of the August, 1977, regular convention of the International. As to plaintiffs' claim based on Section 411(a)(1), the affidavit and exhibits do not establish beyond any genuine question that the plaintiffs were accorded their right to participate in and vote on the business of the union. Moreover, defendants have not demonstrated facts that might entitle them to judgment as a matter of law on plaintiffs' Section 411(a)(3)(A) claim. *See* discussion *supra.*

In the light of the foregoing,

IT IS HEREBY ORDERED that plaintiffs' claim under the International's constitution is dismissed with leave to amend within thirty days.

IT IS FURTHER HEREBY ORDERED that the motion to dismiss the claims brought under 29 U.S.C. §§ 411(a)(1) and 411(a)(3)(A) is denied.

IT IS FURTHER HEREBY ORDERED that the motion for summary judgment is denied.