**LOCAL NO. 2, INTERNATIONAL BROTHERHOOD OF TELEPHONE WORKERS, Plaintiff, Appellant,**

v.

**INTERNATIONAL BROTHERHOOD OF TELEPHONE WORKERS, Defendant, Appellee.**

**No. 6696.**

United States Court of Appeals
First Circuit.

Heard June 8, 1966.

Decided July 13, 1966.

James T. Grady, Boston, Mass., with whom Robert D. Manning and Angoff, Goldman, Manning & Pyle, Boston, Mass., were on brief, for appellant.

Joseph T. Doyle, Boston, Mass., for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

## OPINION

McENTEE, Circuit Judge.

Plaintiff-appellant, Local No. 2, is a labor union composed of some 1,075 male employees of the New England Telephone and Telegraph Company. It is a chartered affiliate of the respondent-appellee, International Brotherhood of Telephone Workers. International has twenty-four other local affiliates located in various sections of New England and a total enrollment of about 10,700 employees of the New England Telephone and Telegraph Company.

International meets in convention every two years. In the interim between conventions its affairs are administered by a fifteen man group known as the International Executive Council (I.E.C.) In March 1964 I.E.C. recommended a general dues increase to the membership of International. This involved raising the minimum local dues paid by its members and also raising the per capital taxes paid by each local to the International.[1] These recommendations required changes in International's constitution. Accordingly, the International secretary-treasurer sent the proposed constitutional changes to each local union with an explanation of the need for the increased funds. On May 7 he sent a letter stating: "The requirements of the Labor Law are that a dues increase must be voted on by a majority of the members in a secret ballot vote taken at a notified membership meeting." Also enclosed was a tally sheet to be executed and returned by the recording secretary. Thereafter, the various locals voted on the proposed in-

---

1. It recommended that the minimum local dues paid by each male member be raised from 60¢ a week to 85¢ a week and that the per capita tax for each male member of International be increased from $1.50 per month to $2.25 per month. As related to Local No. 2, this meant an increase of one cent per week in local dues, since its members were already paying eighty-four cents a week, and an increase of seventy-five cents a month in the per capita tax for each member. I.E.C. made other recommendations that are not pertinent to this case.

crease by secret ballot [2] at notified membership meetings as directed by the secretary-treasurer. Local No. 2 rejected the increase. Shortly after learning that the proposed increase had apparently been accepted by the membership,[3] Local No. 2 notified the International that this increase had not been adopted "in accordance with the Labor Management Reform Act of 1959."[4] Also, it requested that processing of the new payroll deduction cards (based on the increase) be terminated and reimbursement be made for any increase collected. Having received no reply, Local No. 2 thereupon brought this suit [5] to invalidate the increase and for injunctive and other relief.

By letter dated July 29, 1964, International notified the locals [6] that the general dues increase had been approved by the membership by a vote of 6,837 to 3,693 [7] and would go into effect on September 1, 1964. Almost ten months after the general dues increase went into effect, the next regular International Convention [8] voted to increase the local dues and the per capita tax in the amounts as originally proposed, retroactive to September 1, 1964, by enacting identical constitutional amendments as previously voted by the locals. After trial without a jury, the district court dismissed the complaint.[9]

Basically, Local No. 2's contentions on appeal are (1) that the general dues increase is invalid because the procedure followed by the various locals in voting on it does not constitute a *membership referendum* conducted by secret ballot as required by § 411(a) (3) (B) (ii) of the statute,[10] and (2) that the action taken by the convention in June 1965 to in-

---

2. One local did not vote by secret ballot and its votes were not counted in the general tally.

3. Local No. 2 claims that it first learned of this in the May 1964 issue of the IBTW News.

4. The Labor-Management Reporting and Disclosure Act, (LMRDA), 29 U.S.C. § 401 et seq.

5. The complaint was filed on July 9, 1964.

6. Local No. 2 claimed it never received any such notice.

7. The day after this suit was brought, International requested from each local the exact number of votes cast for and against the general dues increase. In reporting the results, wherever a majority of those voting in a local voted to accept the increase, the *entire* membership of that local was recorded as voting for it, and wherever a majority of those voting in a local rejected it, the *entire* membership of that local was recorded as voting against it. Two hundred fifty-five votes were not counted because no secret ballot was taken. Actually only 1,039 out of 10,785 eligible members voted. Of those voting 541 voted to accept and 498 voted to reject the proposed increase. A majority of those voting in seventeen of the locals voted to accept the increase.

8. Held on June 28, 1965.

9. It ruled "that the dues increase was authorized by majority vote of the members in good standing of the International voting in a membership referendum conducted by secret ballot and, accordingly, that the dues increase put into effect on September 1, 1964 was valid."

10. 29 U.S.C. § 411(a) (3) provides as follows:

"*Dues, initiation fees, and assessments.* —Except in the case of a federation of national or international labor organizations, the rates of dues and initiation fees payable by members of any labor organization in effect on September 14, 1959 shall not be increased, and no general or special assessment shall be levied upon such members, except—

(A) in the case of a local labor organization, (i) by majority vote by secret ballot of the members in good standing voting at a general or special membership meeting, after reasonable notice of the intention to vote upon such question, or (ii) by majority vote of the members in good standing voting in a membership referendum conducted by secret ballot; or

(B) in the case of a labor organization, other than a local labor organization or a federation of national or international labor organizations, (i) by majority vote of the delegates voting at a regular convention, or at a special convention of such labor organization held upon not less than thirty days' written notice to the principal office of each local or constituent labor organization entitled to such notice, or (ii) by majority vote of the members in good stand-

crease the dues retroactively from September 1, 1964 did not cure the original invalidity.

International claims that the action taken on the general dues increase by the various locals does constitute "a membership referendum conducted by secret ballot" within the meaning of the statute;[11] that the increase in the "per capita tax" is not an increase in "rates of dues" nor is it a "general or special assessment upon members" as these terms are used in this statute,[12] and finally that this controversy is now moot and the case should be dismissed because of the action of the International Convention adopting this general dues increase retroactive to September 1, 1964.[13]

We shall deal first with the International's contention that the increase in the per capita tax is not an increase in dues. International argues that the statute applies only to " * * * rates of dues * * * payable by *members* of any labor organization * * *."[14] (Emphasis supplied.) and that the per capita tax is paid by the various *locals* —not the members. In support of this proposition it cites Ranes v. Office Employees International Union, Local 28, 317 F.2d 915 (7th Cir. 1963), and King

v. Randazzo, 234 F.Supp. 388 (D.C.E.D. N.Y.1964).

■ We do not agree that *Ranes* stands for the proposition that a per capita tax does not come within the meaning of "rates of dues"[15] King v. Randazzo merely repeats the dicta in *Ranes* and does not otherwise support International's contention. Apparently this is the first time this question has been squarely presented for judicial determination. From our study of the provisions of the statute itself and its legislative history it is our opinion that so-called per capita taxes come within the meaning of "rates of dues * * * payable by members of any labor organization * * *" and that any increase thereof by an International union must conform to the procedure set out in 29 U.S.C. § 411(a) (3) (B).

In King v. Randazzo, supra, the court laid down a very practical test as to what constitutes an increase in dues. It stated at 234 F.Supp. page 394: "Whether there has been an increase in dues must be determined not by who imposed the exaction but by the nature of the imposition and its direct effect upon the financial burden of the individual members." We think this statement goes to the very

ing of such labor organization voting in a membership referendum conducted by secret ballot, or (iii) by majority vote of the members of the executive board or similar governing body of such labor organization, pursuant to express authority contained in the constitution and bylaws of such labor organization: *Provided,* That such action on the part of the executive board or similar governing body shall be effective only until the next regular convention of such labor organization."

11. 29 U.S.C. § 411(a) (3) (B) (ii). See fn. 10.

12. Hence, it argues that the procedure followed to increase the per capita tax need not conform to the statute (see fn. 11), thus leaving this court without jurisdiction since no substantive right is presented to us for enforcement as required for jurisdiction under 29 U.S.C. § 412.

13. This question and the previous question of whether the increase in the per capita

tax was an increase in *dues* were not reached by the district court.

14. 29 U.S.C. § 411(a) (3), first paragraph. See fn. 10.

15. Per capita taxes were only incidentally involved in that case. There the only issue was whether the action of an international union pursuant to § 411(a) (3) (B) of the statute increasing the constitutional minimum for dues payable by its members to their respective local unions can be enforced by an affiliate local union without submitting the question of the dues increase to a vote of its members under § 411(a) (3) (A) of the statute. The local contended that § 411(a) (3) (B) was intended by Congress to apply only to a per capita tax and not to local membership dues. As we read the case, the court merely stated (317 F.2d p. 918) that the Congressional intent was not that restrictive.

heart of the immediate question before us. To contend that per capita taxes are paid by the locals and not by the union members only begs the question. While technically they may be collected from the local unions by the International,[16] it would be unrealistic for us to assume that these assessments are not borne by the members and that they do not have a direct effect upon the financial burden of the individual members.[17]

In the instant case the International is raising the per capita tax and the local membership dues at the same time,[18] which emphasizes International's awareness of the true source of the increased revenue. After the general dues increase was approved, Local No. 2 found it necessary to vote another increase in its local membership dues.[19] Clearly then, the so-called per capita tax is an exaction which is actually paid by the members, however indirectly, and to hold otherwise, it seems to us, would tend to defeat the policy and purpose and undermine some of the safeguards which Congress in its wisdom wrote into this act.

■ We now turn to the issue upon which this case was decided below, namely, whether the general dues increase complied with the requirements of 29 U. S.C. § 411(a) (3) (B) (ii). This presents the narrower question of whether voting by secret ballot at a notified membership meeting is tantamount to voting in a membership referendum conducted by secret ballot. In resolving this issue it is helpful to consider first, Section 411 (a) (3) (A) relating to the procedure which local unions must follow in increas-

ing dues. A comparison of the methods set out in this subsection clearly indicates that Congress intended to provide two entirely different procedures—one by notified membership meeting; the other by membership referendum—each to be conducted by secret ballot. In the former procedure there is a notice requirement, while in the latter there is no such requirement. In the referendum method there is no necessity for notice. We believe Congress intended that in this method the ballot be delivered to each and every eligible union member. He is not required to attend a notified meeting to obtain it. This is the principal distinction between these two statutory procedures.

■ The membership referendum provision in the subsection directly involved in this case relating to dues increases by Internationals is practically identical with the membership referendum provision in the preceding subsection relating to dues increases by locals.[20] Obviously the Congressional intent is the same in both subsections. From this we conclude that the series of notified local membership meetings employed in this case were not the same as and did not constitute a membership referendum within the meaning of the statute. Where a specific procedure is set forth in the statute that procedure must be followed. The procedure mandated by the statute in question not having been adhered to, the general dues increase as voted was initially void.

■ Local No. 2 urges that the constitutional amendments providing for

16. The record shows that the International collected all the dues. The local membership dues were collected weekly. From these, International took the per capita monthly and remitted the balance to the locals.

17. As stated in the brief of Local No. 2, "Whatever it is called or described as, it [the per capita tax] is an increase in the money paid by the members to the International of 75¢ each month. There is

75¢ less each month in each member's pay envelope. * * * "

18. This appears to be the general policy of Internationals that levy so-called per capita taxes. See Ranes v. Office Employees International Union, Local 28, supra, 317 F.2d at 917, fn. 3.

19. This increase took place in August 1964.

20. Compare § 411(a) (3) (B) (ii) with § 411(a) (3) (A) (ii). See fn. 10.

this general dues increase retroactive to September 1, 1964, adopted by the International Convention in June 1965 were also invalid. As reasons therefor it states (1) that the thirty day notice requirement of the statute has not been complied with, and (2) that this action could not validate a procedure that was originally void. There is no merit in its first contention. This notice provision applies only in the case of special conventions.[21] The convention in question was the *regular* International convention held every two years.

■ Its second contention is somewhat more substantial. There is no doubt that under the statute [22] this convention could validly vote a general dues increase effective prospectively and to this extent we uphold its action. Here, however, the convention is also seeking to give this dues increase retroactive effect. This we do not countenance. We may assume, as International suggests, that a convention may properly impose a flat assessment as well as a prospective increase in dues. What the convention did here, however, was something different. A flat assessment would have fallen upon the current membership. The past increases sought to be ratified presumably fell upon some individuals no longer in the union at the time of the convention, and thus entirely unrepresented in the only valid vote. Furthermore, the convention must have been influenced, at least to some extent, by the fact that the "assessment" for which it voted consisted of monies already collected. Where the collection had been improperly achieved we think the membership must be given the benefit of the doubt. We think it more consonant with the intent of Congress to hold that dues increases illegally collected cannot be ratified, and that they should be refunded. However, as indicated above, the general dues increase adopted by the

convention is valid prospectively from the date of its adoption.

The judgment of the District Court is vacated and this cause is remanded to that court for further proceedings not inconsistent with this opinion.

---

21. 29 U.S.C. § 411(a) (3) (B) (i). See fn. 10.

22. See fn. 21.