Leroy GATES, Individually and on behalf of all other members of Local 14–14B International Union of Operating Engineers, Plaintiffs,

v.

Ralph DALTON, as President, George F. Pugh, as Treasurer and Thomas J. Nolan as Business Manager and Financial Secretary of Local 14–14B, International Union of Operating Engineers, AFL/CIO and Local 14–14B, International Union of Operating Engineers, Defendants.

No. 73 C 375.

United States District Court, E. D. New York.

Nov. 30, 1977.

Burton H. Hall, New York City, for plaintiff.

Doran, Colleran, O'Hara, Pollio & Dunne, Garden City, N.Y., for defendants by Robert A. Kennedy, Garden City, N.Y.

### MEMORANDUM OF DECISION AND ORDER

NEAHER, District Judge.

Plaintiff Leroy Gates brought this class action for declaratory, injunctive and other relief claiming that the defendants, Local 14–14B of the International Union of Operating Engineers and its officers, violated § 101(a)(3)(A)[1] of the Labor-Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 411(a)(3)(A), by (1) failing to provide the membership with reasonable notice of intention to vote on an increase in

---

1. The pertinent portion of the bill of rights of members of labor organizations provides:

"(3) Dues, initiation fees, and assessments. —Except in the case of a federation of national or international labor organizations, the rates of dues and initiation fees payable by members of any labor organization in effect on September 14, 1959 shall not be increased, and no general or special assessment shall be levied upon such members, except—

"(A) in the case of a local labor organization, (i) by majority vote by secret ballot of the members in good standing voting at a general or special membership meeting, after reasonable notice of the intention to vote upon such question or (ii) by majority vote of the members in good standing voting in a membership referendum conducted by secret ballot." 29 U.S.C. § 411(a)(3)(A).

their work assessment dues, and (2) improperly presenting the question of the work assessment in compound form to the members for a vote. On July 8, 1975, in an opinion reported at 67 F.R.D. 621, the court denied defendants' motion for summary judgment because genuine material issues of fact concerning both claims remained unresolved.[2] The action was thereafter tried on the merits without a jury and this memorandum contains the court's findings of fact and conclusions of law. Rule 52, F.R. Civ.P.

As noted in the court's prior opinion, certain background facts are not in dispute. In 1969 Local 14–14B negotiated a three-year increased wage contract with employer associations. The contract included for the first time a non-contributory annuity plan for the benefit of union members and a ten-cent per hour dues check-off to cover a work assessment voted by the membership in order to meet the Local's financial needs. This controversy arose during the negotiations for a new wage contract covering the three-year period commencing July 1, 1972. In the interim, the Local had acquired a building to be used as its new headquarters after renovations had been completed. This placed an additional drain on the Local's finances. To solve that problem the Local's negotiators proposed to seek a 35¢ increase in the hourly wage rate rather than 30¢ offered by employers, the 5¢ additional to be allocated to dues check-off so as to increase the members' work assessment from 10¢ to 15¢ an hour.

A principal factual dispute which prompted the court to deny defendants' motion for summary judgment was raised by plaintiff Gates' claim that the members had not been given any notice whatsoever of an intention to change the Local's dues structure at a meeting to be held on June 9, 1972. The evidence at trial, however, did establish that defendant Nolan sent the following mimeographed circular letter, dated May 23, 1972, to the membership:

"Dear Sir and Brother:

"Many of our members have been inquiring about our new building in Flushing. We are pleased to announce that, after months of litigation with the Building Department and our prospective tenants, the Day Room and Business Office will be opened on or around July 1st, 1972. The rest of our Offices to be occupied by the Union will be completed shortly afterwards.

"Our next regular meeting on June 9, 1972 will be a special meeting to discuss further financing of the building and a possible change in our dues structure.

"We urge all our members to attend."

That factual dispute must therefore be resolved against plaintiffs. Whether the letter constituted sufficient notice under LMRDA is another question which will be discussed below.

A further key factual dispute must also be resolved against plaintiffs. Plaintiff Gates and his two witnesses maintained in addition that no proper balloting or voting procedure was followed at the June 9 meeting at which the members present and voting approved the negotiators' proposal referred to above. Instead, it is asserted, only slips of papers were handed around with the words "Guilty" or "Not Guilty" on them to indicate for or against the proposal. Again, the evidence at trial is conclusive that the following mimeographed ballot form was used:

"BALLOT

SHALL LOCAL #14–14–B NEGOTIATE FOR AN ADDITIONAL FIVE (5) CENTS PER HOUR TO BE ADDED TO THE DUES CHECK–OFF ON OUR NEW CONTRACT, JULY 1, 1972?

YES ☐

NO ☐

June 9, 1972." DX E.

The court also rejects plaintiffs' suggestions that the defendants' exhibits turned up under mysterious and questionable cir-

---

**2.** In the same opinion the court certified the action as a class action. Following notification to the 1500–1600 prospective class members, approximately 580 opted out of the class.

cumstances. The documents are unmistakenly authentic and the court accepts as credible the explanation that delay in locating them was due to the Local's move from its former office to the new building and the belated discovery that a retired member had made a habit of keeping old union papers, which disclosed the existence of the May 23, 1972 letter, DX A.

Against that factual background, we turn to three legal issues which are presented. First, there is the question of whether the May 23, 1972 letter to the Local's members (DX A) satisfied the statutory requirement that "reasonable notice of the intention to vote upon" a dues increase be given. 29 U.S.C. § 411(a)(3)(A). For purposes of a decision on that question, the parties accept the court's previous declaration that while

"the statute does not require individual written notice . . . it seems quite clear that a notice required under § 411(a)(3) is not 'reasonable' unless it descends to particulars, and the ordinary union member, attentive to the interests he has at stake in such a situation, is, in some manner, thereby made aware of the specific issue to be voted upon a reasonable time in advance of the meeting." *Gates v. Dalton,* 67 F.R.D. 621 (E.D.N.Y. 1975).

Plaintiffs argue that the May 23, 1972 letter utterly failed to serve as notice under the statutory test, since it did not "warn the membership about the vote to be taken. Nor does it give them an opportunity, or time to reflect on the merits of the dues increase proposal, independently investigate it, or organize support or opposition." Pl. Br. at 8. The language quoted tracks similar remarks of the court, 67 F.R.D. at 628, referring to a meeting notice in the union newspaper, PX 15, and a by-law notice provision.

The May 23 letter, however, cannot be so unfavorably compared. It clearly afforded the membership more than two weeks in which to make inquiry about "further financing of the building and a possible change in our dues structure" and urged members' attendance at what was described

as a "special" meeting to "discuss" such subjects. True, no mention was made in the letter of an "intention to vote upon such question[s]." And there can be no doubt that the ballot handed out at the June 9 meeting, DX B and E, which had been prepared early that week, indicated the union leadership's already formed intention to have a vote at that meeting.

The minutes of the June 9 meeting, PX 12, reflect that after preliminary formalities, the first order of business was an announcement by defendant Dalton, then president of Local 14–14B, that there would be a ballot on the proposed 5¢ dues increase and tellers were appointed to conduct it. Before voting took place, however, defendant Nolan, business manager of the union, described the state of the Local's finances and the reasons and advantages of increasing the dues check-off for which he sought the members' approval. That approval was overwhelmingly given by vote of 232 "yes" against 24 "no". PX 12.

Conceding that "reasonable" prior notice of such a vote is required, defendants contend that the May 23, 1972 letter timely and sufficiently informed the membership "of the general order or business to be considered at the June meeting." Def. Br. 10–11. That argument evades the question posed by the statutory language. The critical query is whether the letter can fairly be said to convey any intention on the part of the Local to have a vote on the dues increase proposal which was placed before the meeting. Defendants urge that the reference to a "possible change in our dues structure" clearly implies an increase and not a decrease in the circumstances and surely would have made the membership aware "of the specific issue to be voted upon." Def. Br. 13.

Although a few members called by the union so testified, their interpretation of the May 23 letter cannot override the intent of § 411(a)(3)(A), even though what is "reasonable notice" is ordinarily a question of fact. The letter relied on simply does not mention a vote on June 9, 1972 or even a specific proposal for a dues increase

and cannot be held to satisfy the statute. To hold otherwise would drain the statute of any real meaning and thwart the declared purposes of Congress noted in the court's prior opinion. The vote on June 9, 1972 on a work assessment increase was therefore taken without prior notice as required by law and must be declared illegal.

The second question raised by plaintiffs relates to the wording of the ballot used at the June 9 meeting. Basically it is plaintiffs' contention that union members were forced into voting for the dues increase because it was tied to a 5¢ increase in the hourly wage rate to be pressed by the negotiators. A similar ballot practice was held to violate § 101(a)(3)(A) of the LMRDA in *Sertic v. Cuyahoga, Lake, Geauga and Astabula Counties Carpenters District Council of the United Brotherhood of Carpenters and Joiners of America*, 423 F.2d 515 (6 Cir. 1970).[3]

█ Although the wording of the ballot, DX E, is susceptible of the meaning attributed by plaintiffs, in light of the explanation given to the members before voting took place, it is clear they understood they were voting to increase the dues check-off from 10¢ per hour to 15¢, to be paid out of the hourly wage increase already under negotiation. See PX 12, pp. 2–3. Plaintiff Gates obviously understood what the vote was about and no evidence was introduced to show any misunderstanding on the part of those members who voted "yes". Indeed, the number of noes, though small, indicates that opposition was to the proposed dues increase and not to negotiating for a higher hourly increase. Plaintiffs' challenge to the form of the ballot is therefore rejected.

█ The really significant question in this case is whether in view of the insufficiency of the prior notice, any actions taken at the June 9 meeting, or thereafter, can be relied upon to validate the exaction of the dues increase from non-consenting members

prior to an incontestably valid vote which took place on August 10, 1973.

Following the June 9 meeting Local 14–14B concluded a contract with employers calling for incremental increases of 35¢ an hour at six-month intervals during the three-year term of the agreement commencing July 1, 1972. These were to be paid partly in wages, annuity contributions, union dues check-off, and allocations for other benefits. The agreement, however, failed to meet the complete approval of the Construction Industry Stabilization Committee established to enforce governmental wage restrictions then in effect. One 35¢ increase was ordered reduced to 25¢ an hour. On November 10, 1972 Local 14–14B held a meeting to obtain membership approval for allocating the 25¢ increment due January 1, 1973, to an increased contribution of 20¢ to the annuity fund and 5¢ to dues check-off as previously voted at the June 9 meeting. The minutes of the November 10 meeting, DX F, reflect that "on voice vote the motion was unanimously adopted."

The 5¢ dues increase was not actually deducted from the wages of Local 14–14B members or workers under union jurisdiction until January 1, 1973. This suit was thereafter commenced following plaintiff Gates' exhaustion of intra-union remedies. On August 10, 1973 Local 14–14B held another meeting—on advice of counsel—to readopt and re-ratify the dues increase. A vote was taken by secret ballot and the increase was approved. There is no question that the union members were notified in writing in advance that such a vote would be taken. See PX 5. The minutes of the meeting note that three named members who requested refunds of the dues check-off were given them. See DX G. These developments, however, do not overcome the illegality of the June 1972 vote and defendants' contentions to the contrary are rejected.

---

**3.** The question put to the union members in *Sertic* was:

"Shall the District Council negotiate a new 3-year agreement with a wage increase of at

least $1.00 per hour plus a 2% gross wage assessment?" 423 F.2d at 519.

Injunctive relief is manifestly not required at this juncture. Local 14–14B has clearly brought itself into conformity with law as to dues collected from and after August 10, 1973. Compliance with that law, however, has been a labor union's obligation since 1959. Indeed, the Constitution of the International Union of Operating Engineers expressly provides for "reasonable notice" of intention to vote upon a question of dues and for a secret ballot on such votes. DX D, Art. XXIII, subd. 7. Defendants' failure to comply with those requirements unfortunately renders the votes taken at the June 9 and November 10 meetings null and void.

The proper actions taken at the August 1973 meeting are effective only as of that date; they cannot retroactively cure the illegality of the votes previously taken. *Peck v. Associated Food Distributors of New England,* 237 F.Supp. 113, 115 (D.Mass.1965); *Local No. 2, International Brotherhood of Telephone Workers v. International Brotherhood of Telephone Workers,* 362 F.2d 891, 896 (1 Cir. 1966). In consequence, the 5¢ dues increase could not lawfully be exacted from those class members who did not vote in favor of the increase at the 1972 meetings. Therefore, each member of the class who has not opted out of this action is entitled to restitution of the amount of illegally increased work assessments paid by him to Local 14–14B prior to August 10, 1973, unless he voted for such increase at the June 1972 meeting. See *Weinmann v. Local 40 of the International Association of Bridge, Structural and Ornamental Iron Workers Union,* Civil Action No. 72–3297 (S.D.N.Y.1976).

Accordingly, judgment is directed in favor of the plaintiff class for restitution of dues unlawfully collected by defendants together with the costs of this action including reasonable attorney's fees. Counsel for the respective parties shall submit on notice forms of proposed judgment consonant with this decision within fifteen (15) days from the date hereof. Provision shall be made therein for procedures to compute the amounts of restitution, for identification of class members who are qualified to receive such amounts, for appropriate notification to such class members and for the manner of proving any claims which are disputed, for payment of claims by Local 14–14B, and for the determination of costs and reasonable attorney's fees.

SO ORDERED.