Christopher WHITE and Sam Goodman, for themselves and class, Plaintiffs,

v.

LOCAL 942, LABORERS' INTERNATIONAL UNION OF NORTH AMERICA; Joe Thomas; Alaska State District Council of Laborers, Laborers' International Union of North America; and Jim Robinson, Defendants.

Civ. No. F80–5.

United States District Court, District of Alaska.

May 26, 1981.

Wm. B. Schendel, Fairbanks, Alaska, Dan Siegel, Siegel, Meyers, Taub, Siegel & Friedman, Oakland, Cal., for plaintiffs.

Bradley D. Owens, Jermain, Dunnagan & Owens, Anchorage, Alaska, for defendants.

## MEMORANDUM AND ORDER

JAMES A. VON DER HEYDT, District Judge.

THIS CAUSE comes before the court on numerous motions submitted by plaintiffs and defendants. After a brief review of the facts underlying this litigation, the court will consider the issues raised by these motions.

*FACTS*

On August 27, 1980, this court issued an unpublished Memorandum and Order (hereinafter "Order") which certified this class action pursuant to Fed.R.Civ.P. 23(b)(2) and granted summary judgment for plaintiffs. The substance of that Order may be summarized as follows:

In November, 1977, defendant Alaska State District Council of Laborers, Laborers' International Union of North America (hereinafter "District Council") raised the membership dues payable to defendant Local 942, Laborers' International Union of North America (hereinafter "Local 942") from $60.00 per year to $120.00 per year. In December, 1978, the District Council raised the working dues payable to Local 942 from $.35 per hour to 3% of gross income. Individual plaintiffs White and

Goodman, members in good standing of Local 942 and the District Council, brought this action to challenge the legality of these increases. Two classes were recognized and certified by the court under Fed.R.Civ.P. 23(b)(2):

—all members of Local 942 between October, 1977, and the present

—all members of Local 942 who have worked, are working, or will work under the provisions of a contract between the District Council and the Alaska Chapter of the Associated General Contractors of America, Inc., effective July 1, 1978, to June 30, 1981.

This action was brought pursuant to § 102 of the Labor-Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. § 412, to redress violations of the secret ballot/dues increase procedure mandated by § 101 of the LMRDA, 29 U.S.C. § 411(a)(3)(A).[1] Relying on *Mori v. International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers, and Helpers, Local Lodge No. 6*, 482 F.Supp. 838 (N.D.Cal.1979), the court held that dues payable by union members to their Local may not be raised by the Local, District Council, or International without following the democratic procedure mandated by 29 U.S.C. § 411(a)(3)(A).[2] Plaintiffs' counsel was ordered to submit a proposed final judgment form. Order, at 5.

On October 24–29, 1980, Local 942 conducted a secret ballot vote concerning proposed dues increases and a proposed assessment to be levied on the membership. The vote was preceded by the requisite notice. The two propositions submitted in ballot

form for the membership's consideration appeared as follows:

Effective November 1, 1980, the Local Union's regular monthly dues shall be $10.00 per month and effective November 1, 1980, the working dues rates in all collective bargaining suits covered by Agreement shall be set at the same rate as was in effect during the month of July, 1980.

YES ☐　　　　　　　NO ☐

The Local Union shall levy an assessment on Local Union members. Each members assessment shall be equal to any refund that may be ordered by the court to each member in the White and Goodman v. Local 942 litigation.

YES ☐　　　　　　　NO ☐

The first proposition was approved by a 414–73 margin (with 3 votes questioned), while the second proposition was approved by a 360–114 margin (with 16 votes questioned). Supplemental Affidavit of Joe Thomas, filed Nov. 17, 1980, Docket # 91.

## THE CLASS ACTION ISSUE

Defendants have challenged the propriety of the court's certification of two classes in the Order. Several arguments have been raised:

—The timing of the court's certification of the classes (contemporaneous with a summary judgment ruling on the merits) resulted in a denial of due process, as there was no opportunity for an evidentiary hearing and challenge to the adequacy of class representation.

1. § 29 U.S.C. § 411(a)(3)(A) provides as follows:

"(3) *Dues, initiation fees, and assessments.*—Except in the case of a federation of national or international labor organizations, the rates of dues and initiation fees payable by members of any labor organization in effect on September 14, 1959 shall not be increased, and no general or special assessment shall be levied upon such members, except—

"(A) in the case of a local labor organization, (i) by majority vote by secret ballot of the members in good standing voting at a general or special membership meeting, after

reasonable notice of the intention to vote upon such question, or (ii) by majority vote of the members in good standing voting in a membership referendum conducted by secret ballot"

2. Because of its ruling on the § 101 claim, the court found it unnecessary to reach plaintiffs' additional claims that the District Council's actions discriminated against members of Local 942 (in that the dues payable to other Locals affiliated with the District Council were not raised), and were taken in violation of the procedures mandated by the District Council's own Constitution.

—"Antagonism" between White and Goodman and the rest of the Local 942 membership made these individual plaintiffs inadequate class representatives.

—The individual plaintiffs did not work under the AGC contract before the October, 1980 valid working dues increase was enacted, were never assessed the illegal working dues increase, and therefore have not suffered the same injury as the members of the second class and lack standing to represent that class.

—The action should have been brought under Fed.R.Civ.P. 23(b)(3), rather than Fed.R.Civ.P. 23(b)(2). Accordingly, notice to class members should have been required, along with the opportunity for class members to affirmatively "opt out" of the class. Fed.R.Civ.P. 23(c)(2).

At the outset, the court exercises its prerogative to alter or amend its earlier order of certification. Fed.R.Civ.P. 23(c)(1). The first class certified by the court (all members of Local 942 between October, 1977, and the present) will remain so certified, while the second class (all members of Local 942 who have worked, are working, or will work under the provisions of the AGC contract) is hereby decertified.[3]

The injury suffered by plaintiffs White and Goodman, and by the class as a whole, was a denial of the statutory right to a secret ballot vote on the question of dues increases. 29 U.S.C. § 411(a)(3)(A). Under 29 U.S.C. § 412, any person whose LMRDA rights have been violated may bring suit in United States District Court. An allegation of direct economic injury is not a jurisdictional prerequisite; the statute speaks of no such additional requirement of economic infringement. Nor is economic injury a constitutionally required dimension of standing. While the members of Local 942 have suffered differing economic injuries, they have suffered identical violations of their statutory rights involving identical questions of law. Order, at 2–3.

Since any member of the second class is by definition a member of the first class, certification of the second class is superfluous. The second class is but a sub-class of those who have been injured financially in an additional way (i. e. those who have had an illegal working dues increase withheld in addition to the illegal membership dues increase withheld from the entire Local membership). Since injury to statutory rights is wholly adequate by itself to confer standing on the individual plaintiffs (*supra*), certification of the second class unnecessarily divides the membership according to the individual's specific degree of economic injury.

▮ The court again concludes that the requirements of Fed.R.Civ.P. 23(a)(1), (2), and (3) have been satisfied. The membership of Local 942 from October, 1977 to the present numbers several thousand, the members share a common injury to their statutory rights guaranteed by the LMRDA, and the claims of plaintiffs White and Goodman are typical of the class.

▮ The court finds no precedent for the proposition that certification and consideration on the merits cannot be contemporaneous, especially since the question of class certification is always susceptible to a ruling by the court *sua sponte*. *Gibson v. Local 40, Supercargoes and Checkers of the International Longshoremen's and Warehousemen's Union*, 543 F.2d 1259, 1263 n. 2 (9th Cir. 1976); 3B *Moore's Federal Practice* § 23.50. Although notice and a hearing may be necessary to comport with due process concerns, *Elliott v. Weinberger*, 564 F.2d 1219, 1229 (9th Cir. 1977), *aff'd in part and reversed in part sub nom. Califano v. Ya-*

---

3. An alteration or amendment under Fed.R. Civ.P. 23(c)(1) must take place "before the decision on the merits." While the court's Order granted summary judgment, the nature of the remedy was not decided in that Order, and a final judgment was never entered. Nor does the present decertification prejudice the rights of either the plaintiffs or defendants. Finally, plaintiffs White and Goodman would have been ineligible to represent the second class in light of the intervening enactment of a valid dues increase by membership vote in October, 1980. Under the original class certification, White and Goodman might ultimately have qualified as members who "will work" under the AGC contract prior to June 30, 1981.

*masaki*, 442 U.S. 682, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979), the court cannot agree that serious questions were raised (or are now raised) as to the ability of plaintiffs White and Goodman to fairly and adequately protect the interests of the class.

■ White's alleged status as "leader of the vocal opposition within the union," and his defeat in a recent union election, are utterly unrelated to his ability to raise a claim that statutory rights of union members have been violated. Plaintiffs' counsel, Mr. Schendel, is known to the court as an experienced and able advocate in cases brought under the LMRDA.

To the extent that division existed within the membership on the dues increase issue, the interests of those opposed to the position of the individual plaintiffs were adequately represented by the defendants, and thus all members of the class were afforded due process. *Rota v. Brotherhood of Railway, Airline and Steamship Clerks*, 64 F.R.D. 699, 706 (N.D.Ill.1974). More importantly, an individual plaintiff asserting statutory rights designed to protect the class of which he is a member cannot be said to have interests antagonistic to that class. *Id.*; *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 n. 4 (9th Cir. 1978). Any class members who do not wish to have their statutory rights vindicated may decide not to avail themselves of the relief obtained by a successful class. They may not however, prevent others from asserting claims on behalf of the class for whose benefit those statutory rights were created.

■■ Finally, the court adheres to its earlier ruling that this class action is properly certified under Fed.R.Civ.P. 23(b)(2), since final injunctive relief is appropriate to the class as a whole. Plaintiffs' claim for monetary damages is incidental to the primary relief sought by this suit: an injunction prohibiting defendants from enacting and/or collecting dues increases in violation of the LMRDA's procedure for secret ballot vote by the membership. Incidental monetary relief does not bar maintenance of a Fed.R.Civ.P. 23(b)(2) class action. *Society for Individual Rights, Inc. v. Hampton*, 528 F.2d 905, 906 (9th Cir. 1975). Since the class was properly certified under Fed.R. Civ.P. 23(b)(2), notice to the class was not required.[4]

## VALIDITY OF THE OCTOBER 24–29, 1980 VOTE

■ Plaintiffs challenge the validity of both of the propositions approved by the membership in the October 24–29, 1980 vote. The first proposition, which provided for increases in both the monthly membership dues .and the working dues, is challenged on the grounds that the coupling of the two types of dues increases in a single . proposition precluded the membership from voting "yes" as to one increase and "no" as to the other. Plaintiffs contend that the use of a multiple question ballot violates the membership's § 101 right to participate in a dues increase election without "coercion." *Sertic v. Cuyahoga, Lake, Geauga and Ashtabula Counties Carpenters District Council of the United Brotherhood of Carpenters and Joiners of America*, 423 F.2d 515, 521 (6th Cir. 1970), *appeal after remand*, 459 F.2d 579 (6th Cir. 1972).

*Sertic* dealt with a situation where a proposed wage assessment was coupled with a proposed directive to the District Council to negotiate a new contract which would include a wage increase. A member could not vote for a wage increase without also voting for a dues increase; conversely, a member could not vote against a dues increase without also voting against a wage increase. Clearly, a much stronger likeli-

---

4. Defendants argue that the October 24–29, 1980 vote in favor of the dues increases has mooted plaintiffs' claim for injunctive relief, leaving only plaintiffs' claim for restitution. This latter claim, defendants contend, can only be raised in the context of a Fed.R.Civ.P. 23(b)(3) class action. Since the court does not agree that plaintiffs' claim for injunctive relief is moot, the court need not reach this issue. Nonetheless, the court does agree that notice and the opportunity to decline restitution should be provided to all members of the class (*infra*). Fed.R.Civ.P. 23(d)(2).

hood exists that a member might choose to vote differently on unrelated matters such as a dues increase and a wage increase, than on two types of dues increases.

The application of *Sertic* was soon limited in *Sheldon v. O'Callaghan*, 497 F.2d 1276 (2d Cir. 1974), *cert. den.*, 419 U.S. 1090, 95 S.Ct. 681, 42 L.Ed.2d 682 (1974), where a compound vote concerning many interrelated provisions of a new constitution was held to be valid. 497 F.2d at 1280. While the other cases cited by defendants on the validity of compound votes are inapposite, the court finds *Sheldon* to be more applicable to the facts of this case than *Sertic*.

In the present case, a separate vote on each of the proposed dues increases would undoubtedly have resulted in a more precise expression of membership sentiment. Nonetheless, this court cannot say that the failure to provide such an opportunity "coerced" the membership or deprived them of a meaningful exercise of their voting rights.

■ The second challenged proposition presents a very different situation. This court's Order held that the dues increases enacted in November, 1977, and December, 1978, were invalid. The propriety of restitution or other relief was not specified in the Order. Nonetheless, apparently in anticipation of restitution being ordered, an assessment to recoup any funds expended in the future by virtue of such an order was proposed to the membership on the October, 1980 ballot.

Defendants' justification of this assessment proposal reveals a fundamental misunderstanding of individual statutory rights. The court's Order held that a violation of statutory rights had occurred. Irrespective of the court-ordered remedy for such a violation, the rights of the aggrieved class members to receive such a remedy may not be denied them by subsequent majority vote. The membership voting on the proposed assessment was not the same membership whose rights were violated by the earlier dues increases. More importantly, even if the two groups were identical, the illegal act could not have been ratified by majority vote, nor could the rights of individual members have been involuntarily waived by majority vote. The assessment must be, and hereby is, invalidated. *Local No. 2, International Brotherhood of Telephone Workers v. International Brotherhood of Telephone Workers*, 362 F.2d 891, 896 (1st Cir. 1966), *cert. den.*, 385 U.S. 947, 87 S.Ct. 321, 17 L.Ed.2d 226 (1966); *cf. Kerr v. Shanks*, 466 F.2d 1271, 1276 n. 3 (9th Cir. 1972); *International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers v. Rafferty*, 348 F.2d 307, 314 (9th Cir. 1965).

## MOOTNESS

■ Defendants argue that the October, 1980 vote has mooted this case. While the court agrees that the membership has been afforded a meaningful opportunity to vote on prospective membership dues and working dues increases, and has in fact approved such increases, plaintiffs' claim for restitution for past sums withheld is ripe for resolution.

Moreover, plaintiffs' claim for permanent relief enjoining possible future illegal dues increases similarly presents a viable controversy, particularly in light of defendants' attempts to circumvent this court's Order (viz. the assessment proposal), and defendants' obvious disagreement with the court's Order, unequivocally expressed in the "Explanation of Vote on Dues Structure" which informed the membership of the October, 1980 vote. *Brown v. Board of Bar Examiners of the State of Nevada*, 623 F.2d 605, 608–09 (9th Cir. 1980); *Lyons v. City of Los Angeles*, 615 F.2d 1243, 1248 n. 9 (9th Cir. 1980), *cert. den.*, —— U.S. ——, 101 S.Ct. 333, 66 L.Ed.2d 158 (1980). The October, 1980 vote was conducted in direct response to this court's Order and is inadequate proof that defendants will abide by the mandate of § 101 in the future.

## RESTITUTION

■ The membership dues increase in effect from November, 1977, until October, 1980, and the working dues increase in effect from December, 1978, until October, 1980, were invalid. Plaintiffs suggest that

the sums wrongfully withheld should be refunded to the class members, while defendants argue that these sums should be distributed in accordance with the wishes of the present membership.

The court is given discretion to fashion "such relief (including injunctions) as may be appropriate" when LMRDA rights have been violated. 29 U.S.C. § 412. The weight of authority clearly supports the remedy of restitution. *Landry v. Sabine Independent Seamen's Association*, 623 F.2d 347, 350 (5th Cir. 1980); *Local # 2*, 362 F.2d at 896; *Mori*, 482 F.Supp. 838 (N.D. Cal.1979); *Gates v. Dalton*, 441 F.Supp. 760, 765 (E.D.N.Y.1977); *Peck v. Associated Food Distributors of New England, Local # 138*, 237 F.Supp. 113, 115 (D.Mass.1965); *contra Sertic*, 423 F.2d at 522. As discussed above, it would be inappropriate for the present membership to determine the use of funds wrongfully collected from an earlier membership.

Defendants' claim of laches is without merit. Plaintiffs timely raised their claims within the statute of limitations. Order, at 3–4.

### NOTICE

Although the court continues to hold that this action is properly maintained under Fed.R.Civ.P. 23(b)(2), the court notes that certain class members may not desire restitution of the illegal dues increases, as evidenced by the results of the October, 1980 assessment vote. Class members may wish to forego restitution so as to help insure the continued economic viability of the Local, and/or may feel that the withheld sums have already provided them with personal returns in the form of increased union services. Of course, some members may have always supported the 1977 and 1978 dues increases, and would have voted in favor of such increases if a vote had in fact been held.

■ As a result, the court hereby orders that notice of the right to accept or reject restitution shall be provided to members of the class. Such notice shall be provided in accordance with the final judgment entered this same date.

The administrative burden and cost of such notice shall be on the defendants. While the duty of providing notice is generally that of plaintiffs in a Fed.R.Civ.P. 23(b)(3) class action, *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974), the Supreme Court has recognized an exception "where a fiduciary duty pre-existed between the plaintiff and defendant, as in a shareholder derivative suit." 417 U.S. at 178, 94 S.Ct. at 2152. Such a relationship exists between a union member and his union officials. 29 U.S.C. § 501(a); *Kerr*, 466 F.2d at 1271. In fact, a suit under § 501(a) of the LMRDA has been viewed as the functional equivalent of a shareholder derivative suit. *Phillips v. Osborne*, 403 F.2d 826, 831 (9th Cir. 1968).

The court need not base this decision on *Eisen*, however, as notice is ordered here pursuant to Fed.R.Civ.P. 23(d)(2), not 23(b)(3).

### DEFENDANTS' COMMUNICATION WITH CLASS MEMBERS

The court cannot agree that defendants' contacts with the class members constitute a violation of the Code of Professional Responsibility, nor is the court willing to enjoin such communication.

Accordingly, IT IS ORDERED:

1. THAT defendants' motion to amend the court's Memorandum and Order of August 27, 1980 to provide for certification under 28 U.S.C. § 1292(b) is denied as moot, since a judgment shall be entered this same date.

2. THAT defendants' motion reconsider and vacate the court's Memorandum and Order of August 27, 1980, and defendants' supplemental memorandum suggesting mootness are denied.

3. THAT plaintiffs' motion to strike and for injunction is denied.

4. THAT plaintiffs' motion concerning implementation of the court's Memorandum and Order of August 27, 1980, plaintiffs' motion regarding notice to Rule 23(b)(2) class, and motion for restitution for class members, are

granted in part and denied in part as more fully appears in the above Memorandum and in the judgment entered this same date.