653 F.2d 1279
 108 L.R.R.M. (BNA) 2031, 92 Lab.Cas. P 12,957
 Robert MORI and Sam Polino, on behalf of themselves and all
others similarly situated, Appellees,
v.
INTERNATIONAL BROTHERHOOD OF BOILERMAKERS, IRON SHIP
BUILDERS, BLACKSMITHS, FORGERS AND HELPERS LOCAL LODGE NO. 6
and International Brotherhood of Boilermakers, Iron Ship
Builders, Blacksmiths, Forgers and Helpers, AFL-CIO, Appellants.
 No. 79-4825.
 United States Court of Appeals,
Ninth Circuit.
 Argued June 11, 1981.
Decided Aug. 17, 1981.
 
 Lawrence Gold, Washington, D.C., for appellants.
 Joe R. McCray, McCray & Roberts, San Francisco, Cal., for appellees.
 Appeal from a Judgment of the United States District Court Northern District of California.
 Before KENNEDY, ADAMS* and FLETCHER, Circuit Judges.
 ADAMS, Circuit Judge.
 
 
 1
 This appeal presents the question whether § 101(a)(3) of the Labor Management Reporting and Disclosure Act (LMRDA) precludes the convention of an international union from establishing minimum dues for a single craft within affiliated local unions.
 
 I.
 
 2
 The International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers (the International) represents employees engaged in shipbuilding, industrial production and field construction. Plaintiffs Robert Mori and Sam Polino represent a class of members of Local 6 of the International who are qualified to work in the construction trade. Prior to August 1977, the membership of Local 6 established its own rate for local dues by secret ballot election. Class members paid to Local 6 field dues of $4.00 per month in addition to regular monthly dues.
 
 
 3
 At a convention of the International held in August 1977, a majority of the delegates adopted a new dues structure applicable only to field construction members. The new structure required payment of not less than two percent of gross income to the local as a field dues supplement to regular local dues, unless the International president approved payment of a lesser amount. These amendments, which were incorporated into Article XX of the International's constitution, also established an additional dues requirement of one-half of one percent of gross wages, to be collected by the local and forwarded to the International.
 
 
 4
 Beginning January 1, 1978, Local 6 collected from plaintiffs field dues of two percent of gross earnings plus regular local dues of $13.00 per month. The membership of Local 6 has never approved the increase of field dues, and has attempted to adopt bylaws excluding the new field dues requirement. The membership also unsuccessfully sought permission from the president of the International to halt the collection of the supplemental dues.
 
 
 5
 In the district court, plaintiffs contended that imposition of the local field dues supplement violated their rights under § 101(a)(3) of the LMRDA, 29 U.S.C. § 411(a)(3), because the supplement was adopted without the approval of a majority of the Local 6 membership, and because it affected only field construction workers and not other members of the union. The district court granted plaintiffs' motion for summary judgment, enjoining continued collection of the two percent dues requirement, and directed repayment of all field dues increases that Local 6 had collected since January 1, 1978. The defendants filed a timely appeal.
 
 II.
 
 6
 A single issue is presented on appeal: whether the district court erred in awarding summary judgment on the ground that § 101(a)(3) of the LMRDA interdicts the convention of an international union from establishing minimum dues for affiliated locals. It should be noted that the plaintiffs do not challenge the levy of one-half of one percent of gross income that is payable to the Local for transmittal to the International. Nor do plaintiffs question the procedural regularity of the convention. Rather, plaintiffs direct their contentions exclusively against the International's attempt, by majority vote at the convention, to increase the amount payable to the local union as local dues.
 
 
 7
 The applicable statute, § 101(a)(3) of the LMRDA, 29 U.S.C. § 411(a)(3), provides:
 
 
 8
 (3) DUES, INITIATION FEES, AND ASSESSMENTS. Except in the case of a federation of national or international labor organizations, the rates of dues and initiation fees payable by members of any labor organization in effect on the date of enactment of this Act shall not be increased, and no general or special assessment shall be levied upon such members, except
 
 
 9
 (A) in the case of a local labor organization, (i) by majority vote by secret ballot of the members in good standing voting at a general or special membership meeting, after reasonable notice of the intention to vote upon such question or (ii) by majority vote of the members in good standing voting in a membership referendum conducted by secret ballot; or
 
 
 10
 (B) in the case of a labor organization, other than a local labor organization or a federation of national or international labor organizations, (i) by majority vote of the delegates voting at a regular convention, or at a special convention of such labor organization held upon not less than thirty days' written notice to the principal office of each local or constituent labor organization entitled to such notice, or (ii) by majority vote of the members in good standing of such labor organization voting in a membership referendum conducted by secret ballot, or (iii) by majority vote of the members of the executive board or similar governing body of such labor organization pursuant to express authority contained in the constitution and bylaws of such labor organization: Provided, that such action on the part of the executive board or similar governing body shall be effective only until the next regular convention of such labor organization.
 
 
 11
 Only one case thus far has applied § 101(a)(3) to a situation similar to that presented here, and it supports the International's position. In Ranes v. Office Employees Union, Local 28, 317 F.2d 915 (7th Cir. 1963), the Seventh Circuit held that "the action of an international union pursuant to Section 101(a)(3)(B) of the Act increasing the constitutional minimum for dues payable by its members to their respective local unions can be enforced by an affiliated local union without first submitting the question of a dues increase to a vote of its members under section 101(a)(3)(A) of the Act." Id. at 917. The court predicated its holding on two considerations. First, although the legislative history of the Act "is silent" on the precise interpretive question, the court would not "assume that Congress was unaware of the traditional structure of dues practices" whereby an international prescribes the minimum dues payable to affiliated locals. The court found no basis for inferring that Congress intended "to strip international unions of their traditional power to control the minima and maxima of rates of dues." Id. Second, the court, while noting that the purpose of § 101(a)(3) is to protect the rights of union members, concluded that the plaintiffs had received all the protection the statute affords, insofar as their local was represented at the convention by a delegation elected by its members. The court found it "wholly illogical" that a vote of the members of a local should be allowed to veto the action of a duly constituted convention.
 
 
 12
 The First Circuit's decision in Local 2, International Bhd. of Telephone Workers v. International Bhd. of Telephone Workers, 362 F.2d 891 (1st Cir.), cert. denied, 385 U.S. 947, 87 S.Ct. 321, 17 L.Ed.2d 226 (1966), also provides some support for finding power on the part of the International to raise local dues. In that case the International, at its regular convention, voted to increase retroactively both local dues and the charge per member each local paid to the International. Plaintiffs challenged the retroactive character of these amendments. The court invalidated the retroactivity of the dues hike, but went on to say: "There is no doubt that under the statute this convention could validly vote a general dues increase effective prospectively and to this extent we uphold its action." 362 F.2d at 896 (citing § 101(a)(3)(B)).
 
 
 13
 Plaintiffs place principal reliance on Steib v. New Orleans Clerks and Checkers, Local 1497, 436 F.2d 1101, 1106 (5th Cir. 1971), inferring from it a general rule that "in the case of a local labor organization, an increase of dues must be approved by the majority vote of the members in good standing voting by a secret ballot." Steib invalidated a three-cents per hour check-off that was to have been retained by the local, while upholding an additional three-cents check-off that would have been split between the international and the district labor organizations. Although a cursory reading of Steib might suggest that it holds an international or district union powerless to increase, by convention, dues payable to a local, this interpretation is not justified, inasmuch as the opinion does not identify the source of the three-cents check-off retained by the local. This information, however, can be derived from White v. King, 319 F.Supp. 122 (E.D.La. 1970), which arose out of the same district convention whose enactments were at issue in Steib. White v. King points out that prior to the convention, the district and international unions divided dues of two cents; the convention approved an increase to three cents. Thus, of the six-cents check-off at issue in Steib, only three cents was earmarked for the district and international bodies, and only that three cents was authorized by the convention. The remaining three cents, intended for retention by the local, evidently was adopted by the local by a procedure other than that specified in § 101(a)(3)(A). Steib therefore does not speak to the authority of an international convention to raise local dues, but represents instead an application of the § 101(a)(3)(A) requirements to increases in local dues adopted by the local union.
 
 
 14
 The lone case that seemingly endorses plaintiffs' analysis of § 101(a)(3) is White v. Local 207, Laborers' International Union, 387 F.Supp. 53 (W.D.La. 1974), where the court held that a district convention could not set local dues for one single union local. The court in White, however, appeared to misunderstand the factual context of Steib, believing that the district convention in that case had adopted both the check-off retained by the local and that forwarded to the district organization; since White v. Local 207 arose in the territorial domain of the Fifth Circuit, the district court regarded Steib as controlling. The authority of White is undermined in view of the King court's description of the convention activities alluded to in Steib.[1]
 
 
 15
 As noted above, the Seventh Circuit in Ranes isolated two considerations supportive of an international's power to establish minimum local dues: legislative intent and adequate protection of union members' rights. Although there are no affirmative disclosures in the legislative history, the Ranes court assumed that Congress did not wish to upset established union practice. This general approach to interpretation of the LMRDA would appear vindicated by American Fed'n of Musicians v. Wittstein, 379 U.S. 171, 178, 85 S.Ct. 300, 304, 13 L.Ed.2d 214 (1964), in which the Supreme Court noted that although the statute and legislative history did not explicitly condone weighted voting at conventions, "in light of the fact that then (i.e. at the time of enactment) as now many large unions had provisions for weighted voting ... it is very clear that weighted voting was not thought to be one of those abuses or forms of misgovernment (protected against by the LMRDA)". Ranes did not, however, document traditional union practices. In the case at bar, the district court, in an opinion denying defendants' motion to dismiss the complaint, 482 F.Supp. 838, 842, took note of this evidentiary lacuna, and of defendants' failure, at the time of the motion, to produce evidence of customary practice. In light of the record before it, the district court declined "to take judicial notice of the asserted fact that international unions have traditionally set minimum local dues rates."
 
 
 16
 By the time the district court considered plaintiffs' motion for summary judgment, however, defendants had prepared a short list of unions whose international constitutions established at the time of the passage of the LMRDA in 1959, a dues structure for affiliated locals. On appeal, defendants have submitted, with this Court's permission, a comprehensive appendix that reproduces constitutions dating from the time of passage of the LMRDA. These documents reveal that a significant number of unions with some of the largest memberships in the country had by 1959 adopted constitutions that set minimum, and in some cases maximum, local dues. These unions include the Teamsters, United Auto Workers, United Steelworkers, United Mine Workers, Brotherhood of Electrical Workers, and Hotel and Restaurant Employees. All of these unions currently retain similar constitutional provisions. Although the practice is not universal the Ladies' Garment Workers did not have a local dues regulation in 1959 and the American Federation of Teachers still has none the conclusion of Ranes that an international's setting of local dues is part of "traditional structure and practices," 317 F.2d at 917, appears correct. In light of the Supreme Court's intimation in Wittstein that traditional practices are relevant to an interpretation of the Act, the existence in 1959 of local dues provisions in most major international union constitutions counsels in favor of the international's position in this case.
 
 
 17
 The Seventh Circuit in Ranes also found it significant that the union members, because they had been represented at the convention, had received the procedural protections of § 101(a)(3)(B). Similarly, plaintiffs in the present case were represented at a convention whose procedural regularity they do not dispute. But, unlike Ranes, the convention action at issue here did not uniformly raise the minimum local dues of all members in affiliated locals. Instead, construction workers, admittedly a minority within the international, were singled out for imposition of the two percent field dues requirement. Further, the convention vested discretion in the International president to approve exceptions to the minimum rate.
 
 
 18
 Notwithstanding the procedural regularity of the convention, there remains the question whether a dues increase uniquely affecting one division of workers and subject to suspension at the discretion of the president is within the range of substantive choices a convention may make without violating § 101(a)(3). One possible answer is that § 101(a)(3) places no substantive limitations on convention action concerning dues: as long as the convention is appropriately constituted it may establish local minimums in any way a majority of delegates select. Such a position, however, might seem at odds with the congressional purpose of shielding union members from "arbitrary financial actions," see 105 Cong.Rec. 2668 (1959). In any event, this Court need not embrace so expansive a view of § 101(a)(3)(B) in order to sustain the convention action. For the field dues increase at issue here was not enacted by the International for the general benefit of the International; rather, the dues collected will be retained by the local construction lodges for their own benefit. The action of the convention reflects the judgment of the entire union concerning the needs of the local lodges. The debate at the convention over the provision illuminates the background to the amendment and reflects that many construction workers supported the dues minimum.
 
 
 19
 Prior to 1977, the construction lodges within the international union had experienced difficulty competing with larger and better established construction unions, see C.R. 129 (remarks of Delegate Crippen) ("The Ironworkers are eating us alive in some areas; the Pipefitters in other areas"). Delegates complained of receiving only sporadic employment, see C.R. 130 (remarks of Delegate Meehan), of the occasional need for staff from non-construction locals to assist the construction lodges with pre-job conferences, see C.R. 134 (remarks of Delegate Hancock), and of agreements "in bad need of revision and upgrading," see C.R. 132 (remarks of Delegate George). The minimum dues requirements were perceived as a source of revenues to enable the local construction lodges to address these problems. See, e.g., id.; C.R. 129 (remarks of Delegate Mulligan) ("Without this, ... we are going to go down the drain and lose a lot of jurisdiction to the larger, better organized crafts that are trying to eat us up right now.").
 
 
 20
 Despite some sentiments expressed in favor of local democracy, the convention ratified the constitutional amendment and rejected a proposal to make imposition of the two percent minimum contingent upon approval by the membership of the particular local union. The record does not reflect an attempt on the part of a majority of the international to exploit or discriminate against the minority of construction workers. Instead, the convention's action appears to reflect the judgment of the majority concerning the measures necessary to enhance the vitality of the construction lodges. This inference is substantiated by the fact that the increase is to be used by and for the construction workers. As in Ranes, the participation of delegates representing plaintiffs ensured their rights under § 101(a)(3)(B), and there is no reason in this case to distrust the democratic process at work at the convention.[2]
 
 III.
 
 21
 Established practice at the time of enactment of the LMRDA, left untouched by Congress, allowed international unions to establish the dues structures of affiliated locals. Although the dues increase at issue here affects only construction workers, no evidence in the record suggests that this disparity will work to the advantage of other members of the International. Since we cannot conclude that the action of the convention was unlawful, the judgment of the district court is reversed.
 
 
 
 *
 Honorable Arlin M. Adams, United States Court of Appeals for the Third Circuit, sitting by designation
 
 
 [1]
 No other case has been brought to our attention which addresses the issue of an international's power to regulate local dues under § 101(a)(3). American Fed'n of Musicians v. Wittstein, 379 U.S. 171, 85 S.Ct. 300, 13 L.Ed.2d 214 (1964), on which defendants rely, upheld dues increases adopted at a convention by a weighted voting system, whereby delegates from each local cast a number of votes equal to the local's membership. The dues at issue were payable to the international, and the Supreme Court did not have occasion to consider the proper procedure for increasing local dues. King v. Randazzo, 346 F.2d 307, 309 (2d Cir. 1965), held that the convention of an intermediate union could establish the dues payable to the intermediate union. Again, the question whether an intermediate union could determine the dues payable to locals was not before the court
 
 
 [2]
 It should be noted, however, that in White v. Local 207, 387 F.Supp. 53 (W.D.La. 1974), the district court overturned a district council's increase in the local dues of a particular local. The court in White stated: "A holding that a district convention could set local dues for one single local union would be to completely sterilize the provisions of § 101(a)(3)(A)." Id. at 56. On the other hand, the court indicated that an international "may set across the board increases in dues to be paid by local union members to their locals." Id. The case at bar, of course, is midpoint between White and Ranes: The increase affects neither a single local nor all locals, but all locals within a single craft. However, because White addressed the manner in which a single local may raise its own dues, the reasoning of Ranes, which pertains to an International's authority, would seem more applicable to the present case